10

FILED

SEP 1 6 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                    Case No. 09-62458-A-13
                                         DC No. DRJ-3
ANA MARIA L. SANCHEZ

                    Debtor.
_____/

FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING DEBTOR'S OBJECTION TO CLAIM NO. 2
OF J. P. MORGAN CHASE BANK

A hearing was held August 5, 2010, on the objection of
debtor to the claim filed by J. P. Morgan Chase Bank ("Chase").
At the hearing, the chapter 13 trustee stated that he would like
to file two case citations that he thought might be helpful to
the court and the parties.  The court ordered the case citations
to be filed by August 9, 2010, and responses to the case
citations filed by August 19, 2010.  The matter was deemed
submitted as of August 19, 2010.

The basic facts are not disputed.  They are as follows.  The
debtor and her husband were debtors in a prior chapter 13 case
filed in August 2005 and numbered 05-16027 (the "Prior Case").
The Prior Case was also a chapter 13 case.  When the Prior Case
was filed, the debtor and her husband were behind on payments on
a mortgage debt owed to Washington Mutual Bank ("WAMU").  Chase
is the successor to WAMU.  In the Prior Case, the debtors

1

proposed a chapter 13 plan that provided for the WAMU claim as Class 1.   The plan in the Prior Case provided for the chapter 13 trustee to make regular ongoing monthly payments to WAMU in the amount of $581.37 and to cure a mortgage arrearage estimated in that plan as $650.

In the Prior Case, WAMU filed a proof of claim setting forth an arrearage of $669.90 and indicating that the ongoing monthly mortgage payment including escrow amounts was $571.38.

The court confirmed the plan in the Prior Case.   WAMU's claim was entered by the trustee for payment of a Class 1 claim; that is, ongoing mortgage payments of $581.37 and an arrearage of $659.

The WAMU arrearage claim was paid in full through the Prior Case.   In the Prior Case, the trustee made ongoing mortgage payments of $581.37 to WAMU from October 2005 to October 2007. For reasons that have not been explained, the trustee ceased making ongoing mortgage payments to WAMU after October 2007.

WAMU never notified the debtors, the debtors' counsel, or insofar as the parties are aware, the chapter 13 trustee in the Prior Case that the required ongoing monthly mortgage payments were not being made.   The debtors were paying those amounts each month to the chapter 13 trustee, but the chapter 13 trustee was not forwarding them to WAMU.

In the Prior Case, the debtors paid all payments required by the plan and completed the plan.   On completion of the plan in the Prior Case, on October 23, 2008, the trustee filed and served on all parties in interest, including WAMU, a Preliminary Final Report and Account showing that the plan had been completed.   The

2

Preliminary Final Report and Account also showed that the WAMU arrearage and mortgage claims had been paid in full.  The Preliminary Final Report and Account was served on WAMU.

No objections were filed to the trustee's Preliminary Final Report and Account, and the case was closed on September 21, 2009.

On or about September 2, 2009, Chase recorded a Notice of Default and Election to Sell, initiating foreclosure against the debtor's residence.  In December 2009, Chase recorded a Notice of Trustee's Sale scheduling a foreclosure sale of the debtor's residence.  The debtor filed the within chapter 13 case to stop that sale from going forward.

The required monthly payments of principal and interest on Chase's note were $415.31, and the final payment was due February 1, 2009.  If the plan in the Prior Case had been properly administered, at the cessation of plan payments in the Prior Case on August 25, 2008, the debtor would have owed Chase five more payments of $514.31, or $2,571.55.

The debtor argues that as between herself and Chase, Chase was in a better position to become aware that the plan in the Prior Case was not being properly administered and to take action.  Therefore, the debtor objects to Chase's claim based on the completion of payments in the Prior Case.  According to the debtor, Chase's claim should be limited to $2,571.55, the amount for the five more payments the debtor would have owed Chase if the payments she made in the Prior Case had properly been transmitted to Chase by the prior trustee.

The facts with respect to the amount of payments made in the

3

Prior Case and the report filed by the trustee in the Prior Case
are substantiated by the declaration of the debtor and by the
court taking judicial notice of the plan, the Notice of Filed
Claims, and the Trustee's Preliminary Final Report and Account in
the Prior Case, as well as the certificates of service of these
documents.

Chase opposed the debtor's objection to its claim.    Chase
acknowledged that:

> "for reasons unknown the Trustee ceased making monthly
> mortgage payments to Washington Mutual in November 2007.
> Instead of continuing to make the regular monthly mortgage
> payments owed by the Debtor under the terms of the Note and
> Deed of Trust, the Trustee ceased making payments after
> October 31, 2007, when a payment of $408.81 was disbursed
> and the total payments reached $14,943.06, which was the
> total debt amount listed by Washington Mutual on its proof
> of claim; however, at that time the principal balance
> remaining on the loan was approximately $6,252.31.    Since
> the obligation securing the claim was not set to mature
> until after the completion of the Plan, the Trustee should
> have continued to make the regular installment payments owed
> to Washington Mutual.    Based on the Trustee's accounting,
> the funds that were to be paid to Washington Mutual were
> distributed to the unsecured creditors in error."

The thrust of Chase's opposition is that Chase was under no
obligation to oppose the trustee's accounting.    Chase knew that
its claim would remain fully intact at the conclusion of the
debtors' plan in the Prior Case and that its claim was not going
to be modified by the plan other than allowing for an extended
time to cure the pre-petition arrearages.    Chase argues that it
was the debtor's burden to notice and fix the problem caused by
the mistake made by the trustee in the Prior Case.    For that
reason, and because it has not received the funds, Chase believes
its claim in this case should be allowed in full.

In response, the debtor argues that Chase is barred by

collateral estoppel or issue preclusion from denying that it and/
or its predecessor in interest received all payments to which
they were entitled in the Prior Case.  The debtor observes that
the rules of issue preclusion are that:

> "To foreclose relitigation of an issue under collateral
> estoppel: (1) the issue at stake must be identical to the
> one alleged in the prior litigation; (2) the issue must have
> been actually litigated in the prior litigation; and (3) the
> determination of the issue in the prior litigation must have
> been a critical and necessary part of the judgment in the
> earlier action [citation omitted] . . . When the issue for
> which preclusion is sought is the only rational one the fact
> finder could have found, then that issue is considered
> foreclosed, even if no explicit finding of that issue has
> been made."

Clark v. Bear Stearns & Co., 966 F.2d 1318, 1320-1321 (9th Cir.
1992).

     The debtor argues that the final decree in the Prior Case
made a finding that the estate in the Prior Case had been fully
administered.  According to the debtor, that equates to a finding
that Chase and/or its predecessor WAMU had received all that they
were entitled to receive in the Prior Case.  The debtor argues
that:

> "In entering the final decree in the prior case, the Court
> necessarily concluded that the plan payments required of the
> debtor had been collected and that those payments had been
> distributed to creditors in accordance with the plan.  That
> conclusion binds Chase and precludes Chase from now denying
> that it received all of the payments it was required to
> receive in the prior case."

     The dispute between Chase and the debtor is essentially a
dispute about which party will bear the loss of the prior
trustee's failure to make the payments required to Chase under
the prior plan.  In this regard, several reported decisions are
helpful.  These are In re Avery, 272 B.R. 718 (Bankr. E.D. Cal.
2002); In re Kincaid, 316 B.R. 735 (Bankr. E. D. Cal. 2004); and

<u>In re Estrada</u>, 322 B.R. 149 (Bankr. E. D. Cal. 2005).  All three cases were decided by Judge McManus.

In the <u>Avery</u> case, a creditor whose timely filed proof of claim was not paid by the chapter 13 trustee as required by the chapter 13 plan filed a motion to vacate the discharge of the chapter 13 debtor.  The Averys had earlier filed a chapter 7 case.  In that case, AIF had filed a complaint objecting to dischargeability of a debt.  The parties stipulated to entry of a nondischargeable judgment in the amount of $11,756.90.  The debtors then filed a chapter 13 petition.  The chapter 13 plan proposed to pay $350 a month for 60 months.  This would have resulted in payment of 100% to general unsecured claims, including the judgment creditor in the nondischargeability action, AIF.  AIF timely filed a proof of claim.  The proof of claim was ambiguous on its face but copies of documents attached to the proof of claim made it clear that AIF did in fact have a monetary claim.  The chapter 13 trustee was aware that AIF had filed a timely proof of claim and reported its claim in the notice of filed claims filed in the case.  The notice erroneously reported the amount of AIF's proof of claim as $0.  The court concluded that the trustee's interpretation of AIF's proof of claim was unreasonable, particularly considering the fact that the debtors had scheduled the claim as undisputed, liquidated, and noncontingent.  The debtors knew that AIF's claim was being treated as $0 by the chapter 13 trustee but did nothing.  The court also held that:

> "The trustee's failure to pay AIF's claim in accordance with
> the plan should have come to light in connection with the
> case closing procedures which led to the approval of the

6

trustee's final report and account and the issuance of the
debtor's discharge.  Instead, the case closing procedures
used by the chapter 13 trustee and approved by the court
have only compounded the injustice to AIF.  Without
affording AIF prior notice and opportunity to object, the
court approved the chapter 13 trustee's final report and
account, gave the debtors their chapter 13 discharge,
discharged the trustee from his duties, released the trustee
and his surety from any liability, and closed the case."

272 B.R. at 725-726.

The court in <u>Avery</u> observed that:

"The trustee is fully accountable for his or her control and
supervision of the plan payments.  11 U.S.C. § 704(2) and §
1302(b)(1).  The failure to account for the payments, or
distributions to creditors not entitled to dividends, may
subject the trustee to personal liability [citation
omitted]."

<u>Id.</u>, at 726.

The <u>Avery</u> court concluded that a big part of the problem was

that while AIF was aware that it was entitled to 100% dividend,

no one served the trustee's final report on AIF before the court

approved the final report and the debtors received their

discharge.  The court stated:

"Had someone served it [the final report], AIF would have
had an opportunity to point out to the trustee that he had
misinterpreted its proof of claim and to demand payment in
full in accordance with the plan."

<u>Id.</u>, at 727-728.

The <u>Avery</u> court emphasized the importance of the debtor and

creditors being served with the final report in a chapter 13 case

before the court approves that report and discharges the debtor.

"It is vital to the accuracy of the final report that the
debtor and creditors be served with it before the court
approves it, discharges the debtor's liability for pre-
petition claims, and discharges the trustee from his duties.
The debtor knows what he has paid to the trustee and can
object if the trustee has not accounted for all payments.
Creditors know whether and how much the trustee has paid

7

them, and they will be motivated to object if the trustee erroneously reports that he has paid their claim in accordance with the plan."

Id., at 728.

Because AIF had received no notice, the court granted AIF's motion to vacate the entry of the debtor's discharge.

As a result of the <u>Avery</u> decision, the bankruptcy courts for the Eastern District of California modified the procedure for issuance of a chapter 13 discharge.  The procedure now requires that prior to entry of a chapter 13 discharge, the trustee's preliminary final report along with notice of opportunity to object be served on the debtor and all creditors.  It was that post-Avery procedure that was followed in the prior case here. Thus, in this case, WAMU/Chase was served with a copy of the preliminary final report in the prior case and had the opportunity to object to it.

In <u>In re Kincaid</u>, 316 B.R. 735, the debtors completed payments under their plan.  However, based on the filed proofs of claim to which they had not objected, they failed to pay a creditor in full as required by their plan.  For that reason, it was appropriate to dismiss the case.  The court discussed <u>Kincaid</u> in the subsequent case of <u>In re Estrada</u>.  322 B.R. 149 (E.D. Cal. 2005).  In <u>Estrada</u>, the court characterized <u>Kincaid</u> this way:

"In <u>Kincaid</u>, for instance, the debtors' plan required that a secured claim be paid in full.  To accomplish this, the debtors promised to pay $300 a month for 42 months, a total of $12,600.  The debtors made all of these payments. However, the claim filed by the creditor exceeded $12,600. The Notice of Filed Claims alerted the debtors to this problem.  Rather than amend their plan to increase the plan payments in order to pay the secured claim in full, the debtors objected to the claim.  Their objection was ultimately dismissed.  By the time of the dismissal, the

8

debtors had made their 42nd plan payment and so could no
longer modify their plan.  See 11 U.S.C. § 1329(a).  As a
result, the claim was neither disallowed nor paid in full as
promised by the plan.  The debtors did not receive a
discharge.  Instead, their petition was dismissed."

<u>Id.</u> at 154.

This case is unlike <u>Kincaid</u>.  In the Prior Case, the debtors
made all the payments that the plan required, and the payments
made were sufficient to enable the chapter 13 trustee to make the
payments required to be made to Chase/WAMU.  The debtors in the
Prior Case properly paid funds to cure the prepetition arrearage
on the mortgage, and they maintained the monthly ongoing payments
to the creditor by paying them to the trustee as required by the
plan.  The trustee simply failed to transmit some of the ongoing
payments to Chase.

Under the foregoing circumstances, the court is persuaded
that the debtor has the better argument.  The debtors made all
the payments they were required to make under the plan in the
Prior Case.  The payments contemplated by that plan were
sufficient to pay the arrearage to the creditor and also to
maintain ongoing monthly mortgage payments.  The trustee in the
Prior Case simply failed to continue making the ongoing monthly
mortgage payments.  Instead, he appears to have paid those
amounts to unsecured creditors.

The court agrees with the debtor that the creditor was in a
better position to notice this problem.  WAMU/Chase should have
noticed that it was no longer receiving ongoing monthly mortgage
payments from the trustee and inquired about this problem, which
could have been easily resolved.  The debtor had no way to
discern easily that the trustee was not properly allocating the

1  payments made in the Prior Case.  The creditor, on the other

2  hand, was supposed to be receiving ongoing monthly mortgage

3  payments.  When the month came in which no payment was received,

4  that should have alerted the creditor to do something about the

5  problem.  Instead, it waited, and then once the Prior Case was

6  closed, commenced foreclosure proceedings.

7      For the foregoing reasons, the objection to claim is

8  sustained.  Counsel for debtor may submit a proposed form of

9  order consistent herewith.

10 DATED: September _16_ 2010

11

12

13 WHITNEY RIMEL, Judge
   United States Bankruptcy Court

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28